IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROTISH V. SINGH,

           Plaintiff,

         v.

SUE WASHBURN, Food Service Manager, G.
HALL, Assistant Food Service Manager, S.
FRANKE, Eastside Institution Administrator, J.
MYRICK, Assistant Superintendent for
Security, S. LANKFORD, Safety Manager, M.
GOWER, Assistant Director for ODOC,
P. HOEYE, Assistant Superintendent TRCI, S.
JOHNSTON, Health Service Manager, V.
REYNOLDS, Executive Assistant, C.
CLARKE, Food Service Coordinator, A.
SMITH, Physical Plant Coordinator, S. SMITH,
Nurse, M.E. PERKINS, Nurse Manager, and S.
SHELTON, Medical Director,

           Defendants.

Case No. 2:14-cv-01477-SB

**FINDINGS AND
RECOMMENDATION**

---

**BECKERMAN, Magistrate Judge.**

Page 1 - FINDINGS AND RECOMMENDATION

Rotish V. Singh ("Singh"), an inmate in the custody of the Oregon Department of Corrections ("ODOC") and currently housed at Two Rivers Correctional Institute ("TRCI"), filed this action *pro se* against fourteen individually-named current and former employees of ODOC (collectively "Defendants"). Singh filed a complaint alleging two claims under 42 U.S.C. § 1983. Specifically, in Claim One, Singh pleads violations of his First, Eighth, and Fourteenth Amendment rights, arising from his alleged exposure to toxic mold at TRCI (Eighth Amendment), and his subsequent efforts to grieve that exposure (First and Fourteenth Amendments). In Claim Two, Singh brings an Eighth Amendment claim arising from allegations that medical staff at TRCI failed to treat his chronic medical condition (Eighth Amendment).

Defendants filed a Partial Motion to Dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants seek an order dismissing Claim One of Singh's complaint. Specifically, Defendants move to dismiss Singh's Eighth Amendment "toxic mold" claims as untimely, and his First and Fourteenth Amendment claims for failure to state a claim for relief. In addition, Defendants seek dismissal of all claims alleged by Singh against individual Defendants M. Gower and S. Johnston, because there are no allegations that these two individuals participated in the claimed constitutional violations.[1] Singh filed an opposition to Defendants' motion to dismiss. Additionally, Singh sought leave to file a supplemental complaint, naming six additional defendants and adding three new claims. For the reasons set forth below, the district judge

---

[1] Defendants do not move to dismiss Singh's Eighth Amendment medical claim alleged against individual Defendants S. Smith, Perkins, Gower, and Shelton. Singh alleges Defendant S. Smith denied him adequate medical care, and that her actions were, in part, retaliation for his prior grievances against her. Singh alleges that Defendants Perkins, Gower, and Shelton ratified Defendant S. Smith's actions.

Page 2 - FINDINGS AND RECOMMENDATION

should grant Defendants' partial motion to dismiss, and deny Singh's request for leave to file a supplemental complaint.

## I. FACTS AND PROCEDURAL HISTORY[2]

In his complaint, Singh alleges that between November 9, 2011, and July 10, 2012, he was assigned to work in TRCI's food services department, the "Tortilla Room." (Compl. ¶ 2.) On March 27, 2012, physical plant inmate work crews "began removing toxic mold" from the Tortilla Room. (Compl. ¶ 5.) Singh asserts that Defendants assured him and the other inmate workers "that their health and safety [were] not at risk, and no protective safety gear [was] necessary." (Compl. ¶ 7.) Singh further alleges that the next day he experienced shortness of breath and chest pain, severe enough that he reported for medical treatment. (Compl. ¶ 15.) Singh asserts his "work area was contaminated between March 27, 2012 up until April 6, of 2012 . . . ." (Compl. ¶ 22.)

On April 1, 2012, Singh wrote two inmate communication forms ("kytes"), one to Defendant Lankford and one to Defendant Washburn. In the kytes, Singh discussed his "health and safety concerns while cleaning the mold infested Tortilla Room without any protective safety gear." (Compl. ¶¶ 17-18.) Singh alleges that he wrote several more kytes complaining about exposure to toxic mold throughout the month of April 2012. (Compl. ¶¶ 23-26.) In addition, Singh alleges that on April 22, 2012, he filed an administrative grievance against Defendant Hall, in which he grieved his exposure to toxic mold. (Compl. ¶ 31.) Singh pursued his administrative grievance against Defendant Hall through both levels of appeal, and that grievance process was complete as of September 17, 2012. (Compl. ¶ 10.)

---

[2] The Court recounts only the facts in Singh's complaint that are relevant to the present motion. Thus, Singh's allegations and claims against Defendants A. Smith, Perkins, Bower, and Shelton regarding inadequate medical care are not included here.

Singh alleges that, in addition to his April 22, 2012 toxic mold grievance, he attempted to file additional toxic mold grievances complaining about the role of other ODOC staff members during the abatement process. (Compl. ¶ 33.) Singh asserts, however, that Defendant Reynolds refused to process any other grievances arising out of the toxic mold incident. (Compl. ¶¶ 34-36.) As a result, Singh grieved Defendant Reynolds for "her failure to process grievance(s) . . . ." (Compl. ¶ 37.) Singh filed this complaint on September 11, 2014. (Compl. 1, 34.)[3]

## II. DISCUSSION

### A.    Motion to Dismiss

#### 1.    Legal Standard

Defendants move to dismiss Singh's complaint pursuant to Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court assumes the factual allegations in the complaint to be true. *Iqbal*, 556 U.S. at 678. Conclusory statements – such as the mere recital of the elements of a claim – are not entitled to an assumption of truth. *Moss*, 572 F.3d at 970-71 (citing *Iqbal*, 556 U.S. at 678). Thus, the plaintiff must plead factual content allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A statute of limitations dismissal pursuant to Rule 12(b)(6) is appropriate "only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at*

---

[3] Under the "mailbox rule," a *pro se* prisoner's court filing is deemed filed at the time the prisoner delivers the pleading to prison authorities to forward to the court clerk. *Douglas v. Noelle*, 567 F.3d 1103, 1107-09 (9th Cir. 2009).

*Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (internal citation omitted), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002).

Courts "construe pro se complaints liberally and may only dismiss a pro se complaint for failure to state a claim if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011), *abrogated on other grounds as recognized in Richey v. Dahne*, 807 F.3d. 1202, 1209 n.6 (9th Cir. 2015).

### 2.    Analysis

#### (a)    Claim One – Eighth Amendment

Section 1983 provides a private right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege two essential elements: (1) a federal constitutional or statutory right was violated; and (2) the alleged violation was committed by a person acting under the color of state law. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of crimes.[4] Singh alleges violations of the Eighth Amendment arising from his exposure to toxic mold without proper protective gear or training. (Compl. 2-4.)

Defendants argue that all of Singh's Eighth Amendment claims arising from his exposure to toxic mold are time-barred, because Singh knew of his claims more than two years before he signed his complaint. Further, Defendants contend Singh's toxic mold claims are time-barred even

---

[4] The Eighth Amendment's Cruel and Unusual Punishments Clause applies to the states through the Fourteenth Amendment's Due Process Clause. *See Graham v. Florida*, 560 U.S. 48, 53 u(2010).

after allowing for a 149-day tolling of the limitations period to account for the time required for Singh to exhaust his administrative remedies. In response, Singh argues that his Eighth Amendment toxic mold claims are not time-barred because he did not discover his injuries until the date that he filed his first grievance and, in any event, the principles of a "continuing tort" apply to save his claims from dismissal.[5]

### (i)    The Applicable Statute of Limitations

Section 1983 contains no specific statute of limitations, thus federal courts apply the forum state's statute of limitations for personal injury actions. *Maldonado v. Harris*, 370 F.3d 945, 954-55 (9th Cir. 2004). In Oregon, the applicable statute of limitations for a 42 U.S.C. § 1983 action is two years from the date that the cause of action accrues. *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002); *see also* Or. Rev. Stat. § 12.110. The accrual date for a § 1983 cause of action "is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (quotations and citation omitted); *see also Dyniewicz v. U.S.*, 742 F.2d 484, 486-87 (9th Cir. 1984) (holding that a plaintiff's claim accrued for the purpose of the statute of limitations when the injury and the cause of the injury were discovered).

---

[5] Singh also argues that he tried informally to resolve his claims prior to filing a grievance and therefore should be credited an additional 27 days for tolling. The statute is tolled only during the formal grievance period. *See Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2004) (tolling must be applied during the mandatory formal grievance process). There is no authority for tolling the limitations period during informal proceedings.

### (ii)    The Accrual of Singh's Claim

As a preliminary matter, the Court notes that Singh alleges two separate Eighth Amendment deliberate indifference claims. In Claim One, Singh alleges that Defendants subjected him to an unsafe work environment (toxic mold claims), and in Claim Two he alleges that three named individuals failed to treat his ongoing chronic medical condition. (*Compare* Compl. 10-25 (Claim One) with Compl. 25-30 (Claim Two).) Presently, Defendants move for dismissal only of Singh's exposure to toxic mold claims under Claim One. Thus, the Court must determine when Singh's Eighth Amendment toxic mold claims accrued.

Singh's exposure to toxic mold is not the "injury" in this case. Rather, the alleged injury is Defendants' deliberate indifference to Singh's welfare. *See TwoRivers v. Lewis*, 174 F.3d 987, 991-92 (9th Cir. 1999) (holding that claim based on allegation of deliberate indifference to serious medical need accrues when plaintiff knew or had reason to know of the defendants' deliberate indifference); *see also Actkinson v. Vargo*, 284 Fed. Appx. 469, 471 (9th Cir. 2008) ("In a suit . . . asserting an 'injury' of deliberate indifference, the claim therefore accrues when the prisoner 'knew or had reason to know of the [prison] employees' deliberate indifference.'" (citation omitted)). Thus, Singh's toxic mold claims accrued when he knew or had reason to know of the Defendants' deliberate indifference to Singh's exposure to toxic mold.

Singh alleges that Defendants acted with "deliberate indifference by subjecting [him] to unsafe condition of work confinement, when they knew or should've known the potential risk of serious harm yet disregarded that risk by failing to take reasonable measure to abate it." (Compl. 1-2.) He alleges that he was ordered "to clean and sanitize the whole mold infested Tortilla Room" on March 27, 2012, and that he asked for a "face mask and other protective gear" that same day.

Page 7 - FINDINGS AND RECOMMENDATION

(Compl. ¶¶ 11-12, 14.) Singh alleges that on March 28, 2012, he "reported for sick call . . . after experiencing shortness of breath and chest pain." (Compl. ¶ 15.) On April 1, 2012, Singh wrote a kyte "to Defendant Lankford regarding [his] health and safety concerns while cleaning the mold infested tortilla room without any protective safety gear." (Compl. ¶ 17.) On the same day, Singh "wrote a kyte to Defendant Washburn, regarding Defendant Hall[']s actions and/or inactions on March 27, 2012 . . . ." (Compl. ¶ 18.) Singh alleges that he again went to medical services on April 2, 2012, and April 6, 2012. (Compl. ¶¶ 19, 21.) Finally, Singh alleges that his "work area was contaminated between March 27, 2012 up until April 6, 2012." (Compl. ¶ 22.)

Defendants argue that Singh's claims accrued no later than April 6, 2012, because by that date he "had repeatedly complained about his exposure to toxic mold and his alleged injuries." (Defs.' Reply 4.) Based on the allegations in Singh's complaint, it is clear that by April 6, 2012, Singh was aware of Defendants' conduct in exposing him to toxic mold without adequate safety gear and training. Singh has not alleged that he was exposed to the toxic mold after April 6, 2012. (Compl. ¶ 22 ("Plaintiff[']s work area was contaminated between March 27, 2012 up until April 6, of 2012[].").) Accordingly, Singh knew or had reason to know of Defendant Hall's deliberate indifference to Singh's exposure to toxic mold on or before April 6, 2012. *See TwoRivers*, 174 F.3d at 991-92.

### (iii)    The Applicable Tolling Period

Equitable tolling principles apply to § 1983 civil rights cases. *Brown*, 422 F.3d at 942-43. A plaintiff is entitled to equitable tolling for the time spent properly exhausting administrative remedies. *Id.*

On April 22, 2012, Singh filed a grievance against Defendant Hall, alleging that Hall's actions on March 27, 2012 (ordering Singh to clean and sanitize the tortilla room without protective gear or training), directly resulted in Singh's respiratory illness. (Pl.'s Resp. Ex. 1.)[6] The second level of appeal for that grievance was complete on September 17, 2012. (Pl.'s Resp. Ex. 3.)[7] The duration between the filing date, April 22, 2012, and the decision on Singh's grievance, September 17, 2012, is 149 days. This calculation includes both the beginning and the end date. Thus, the limitations period must be tolled 149 days due to Singh's act of pursuing the formal grievance procedures required to exhaust his administrative remedies before filing the complaint in this case.

Singh's claim accrued on April 6, 2012, and he had two years, plus 149 days, from that date to file his complaint. Pursuant to that calculation, the limitations period for Singh's Eighth Amendment deliberate indifference claims based on his exposure to toxic mold expired on September 2, 2014. Singh filed his complaint on September 11, 2014, beyond the limitations period.

### (iv)    The Continuing Violation Doctrine

In an effort to avoid the statute of limitations bar, Singh argues that the "continual violation doctrine" applies here. (Pl's Resp. 36.) Specifically, Singh contends that "Defendants have still

---

[6] The Court takes judicial notice of Singh's Exhibit 1, which is a CD 117 (10/03) inmate grievance form bearing log number TRCI-20120-04-114. *See* Fed. R. Evid. 201. The fact that Singh submitted the grievance is not disputed by either party. Additionally, Singh's complaint contains a summary of Exhibit 1. (Compl. ¶ 31.)

[7] The Court takes judicial notice of Singh's Exhibit 3, which is a CD 117c (10/03) inmate grievance appeal form bearing log number TRCI-20120-04-114, including the response from Defendant Gower. *See* Fed. R. Evid. 201. The fact that Singh submitted the grievance appeal is not disputed by either party. Additionally, Singh's complaint references Exhibit 3 in support of the exhaustion requirement. (Compl. 9-10.)

Page 9 - FINDINGS AND RECOMMENDATION

refused to properly treat plaintiff's serious medical condition in connection with plaintiff's exposure to toxic mold." (Pl.'s Resp. 37.)

The continuing violation doctrine is an equitable doctrine designed "to prevent a defendant from using its earlier illegal conduct to avoid liability for later illegal conduct of the same sort." *O'Loghlin v. County of Orange*, 229 F.3d 871, 875 (9th Cir. 2000). To establish a continuing violation, a plaintiff must show "a series of related acts against a single individual . . . that . . . 'are related closely enough to constitute a continuing violation.'" *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1480-81 (9th Cir. 1989) (quotations and citation omitted). The mere continuing impact from a past violation is not actionable under the continuing violation doctrine. *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001).

Although the Ninth Circuit has not specifically applied the continuing violation doctrine to an Eighth Amendment deliberate indifference claim, in an unpublished decision the court assumed that the doctrine applied and determined that the prisoner's claim was nevertheless time barred. *See Hill v. Prunty*, 55 Fed. Appx. 418, 418-19 (9th Cir. 2003); *see also Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (finding that continuous violation doctrine applied to defendants' deliberate indifference for the span of time that prison officials were aware of plaintiff's injury and allegedly refused to treat it); *Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir. 1980) ("[T]he [arrestee's] allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided."); *Neel v. Rehberg*, 577 F.2d 262, 263-64 (5th Cir. 1978) (finding that where inmate alleged that jail officials failed to provide medical treatment over a three-month period, the continuous violation doctrine applied and the statute of limitations did not begin to run until the end of that period).

Similarly, district courts in the Ninth Circuit have consistently recognized the continuing violation doctrine in prisoner civil rights cases. *See, e.g., Gutierrez v. Williams*, No. 3:09-cv-6204-KI, 2011 WL 2559788, at *5 (D. Or. June 29, 2011) (applying continuing violation doctrine to plaintiff's claim that on multiple occasions the prison staff sold him defective shoes that caused him back problems); *Watson v. Sisto*, No. 2:07-cv-01871 LKK KJN P, 2011 WL 533716, at *5 (E.D. Cal. Feb. 14, 2011) (applying continuing violation doctrine to plaintiff's claim that the prison health system, as administered by doctors and staff, consistently failed to provide adequate medical care for plaintiff's back condition); *Evans v. County of San Diego*, No. 06 CV 0877 JM (RBB), 2008 WL 842459, at *12 (S.D. Cal. Mar. 27, 2008) (applying the continuing violation doctrine to plaintiff's deliberate indifference claim because the claim was not based on the original knee injury but rather on defendants' ongoing failure to treat the injury).

The doctrine does not, however, apply when a plaintiff's claims are based on discrete acts. *See McCollum v. California Dep't of Corrections*, 647 F.3d 870, 877 (9th Cir. 2011) (holding that district court "correctly concluded that [prisoner's] complaint was based on a discrete incident . . . and thus cannot be classified as a continuing violation"); *see also Tarabochia v. Adkins*, 766 F.3d 1115, 1128 n.13 (9th Cir. 2014) ("Even if we were to consider this argument, we find the continuing violations doctrine inapplicable since the Tarabochias' claims are based on discrete acts, each of which is actionable on its own." (citation and quotations omitted)); *MacGregor v. Dial*, No. 2:13-cv-1883 JAM AC P, 2015 WL 1405492, at *9 (E.D. Cal. Mar. 25, 2015) (finding that the continuing violation doctrine did not apply because the plaintiff's allegations were based on discrete acts of deliberate indifference); *Navarro v. Herndon*, No. 2:09-cv-1878 KJM KJN P, 2011 WL 3741351, at *8 (E.D. Cal. Aug. 24, 2011) (finding that continuing violation doctrine did not apply because

Page 11 - FINDINGS AND RECOMMENDATION

each mental health diagnosis and placement was discrete with its own consequences), *adopted in part and rejected in part on other grounds by* 2011 WL 4578534 (E.D. Cal. Sept. 30, 2011).

Based on a careful reading of Singh's complaint, and as discussed above, it is clear that Singh brings two separate Eighth Amendment claims: exposure to toxic mold and inadequate medical care. Singh's Eighth Amendment inadequate medical care claim is not presently at issue, because Defendants have not moved to dismiss that claim. With regard for his Eighth Amendment toxic mold claims, Singh does not allege any exposure to toxic mold while working in the Tortilla Room after April 6, 2012. *See Douglas v. California Dep't of Youth Authority,* 271 F.3d 812, 822 (9th Cir.) (holding that the doctrine is applicable either where defendants engaged in a "series of related acts" against him or engaged in a "systematic policy or practice . . . that operated, in part, within the limitations period – a systemic violation"), *as amended by* 271 F.3d 910 (9th Cir. 2001); *cf. Jones v. Scribner,* No. 1:04-CV-05742-LJO-WMW, 2009 WL 233915, at *7 (E.D. Cal. Jan. 30, 2009) (repeated failures to fix roof, exposing prisoners to mold and pigeon feces, constituted a continuing violation). In addition, Singh has not alleged that these Defendants engaged in a system or practice of violating his constitutional rights. *Douglas*, 271 F.3d at 822.

The continuing violation doctrine does not apply to Singh's toxic mold claims. Accordingly, the district judge should dismiss Singh's Eighth Amendment toxic mold claims as time-barred.

### (b)    Claim One – First and Fourteenth Amendment

In his complaint, Singh alleges that Defendants retaliated against him, in part, by refusing to process his grievances complaining of his exposure to toxic mold, in violation of the First and

Fourteenth Amendments.[8] (Compl. ¶¶ 33-38.) Defendants argue that these counts fail as a matter of law because Defendants complied with all applicable Oregon Administrative Rules ("OAR") when processing Singh's grievance forms.

Under the Oregon Administrative Rules in place in 2012, ODOC inmates were not permitted to file multiple grievances for a single incident, nor were they permitted to grieve the actions of more than one ODOC employee per grievance form. In 2012, OAR 291-109-0140(5) provided: "An inmate may not file more than one grievance regarding a single incident or issue." As of 2012, OAR 291-109-0140(3)(g) provided: "An inmate cannot grieve . . . the action or decision of more than one DOC . . . employee, volunteer or contractor on a single grievance form."

In addition to the April 22, 2012 grievance Singh initiated against Defendant Hall, Singh filed grievances against Defendants Washburn, Lankford, Clarke, and A. Smith for their roles in exposing Singh to toxic mold. (Pl.'s Resp. Exs. 4, 6-7.)[9] Defendant Reynolds returned all four of these grievance forms to Singh as non-compliant with the ODOC grievance requirements, because they were repetitive of a previously-filed grievance. Under ODOC grievance procedures, Singh is not

---

[8] Singh also alleges that "Defendant(s) retaliated against plaintiff by firing plaintiff from his assigned job duties . . . ." (Compl. 4.) This statement stands alone. Singh does not provide any additional information or allegations in support of this conclusory statement. As such, the Court is unable to assess whether the allegation constitutes a viable claim for retaliation against Defendants.

Singh also alleges that Defendant S. Smith denied him adequate medical care as retaliation for his "continued pursuit of filing numerous grievances . . . ." (Compl. 5.) Defendants do not presently move for dismissal of Singh's inadequate medical care claims.

[9] The Court takes judicial notice of Singh's Exhibits 4 and 6-7, four CD 117 (10/03) inmate grievance forms bearing log numbers TRCI-20120-04-115 (Clarke), TRCI-2012-05-002 (Lankford), TRCI-2012-05-005 (Washburn), and 2012-05-019 (A. Smith). *See* Fed. R. Evid. 201. The fact that Singh submitted the grievance forms is not disputed by either party. Singh's complaint contains a summary of Exhibits 4 and 6-7. (Compl. ¶¶ 33-35.) Additionally, Singh's complaint references Exhibit 3 in support of the exhaustion requirement. (Compl. 9-10.)

Page 13 - FINDINGS AND RECOMMENDATION

permitted to appeal the denial of a grievance based on non-compliance with an OAR. (Pl.'s Resp. Ex. 8 at 3 ("Grievances that are denied by the grievance coordinator cannot be appealed.").)[10] Instead, Singh filed a grievance challenging Defendant Reynolds' refusal to process his four additional grievances. (Pl.'s Resp. Ex. 8 at 1-2.) Singh pursued his grievance against Defendant Reynolds through the second level of appeal, pursuant to the ODOC Grievance Review System. Defendant Reynolds' decision not to process Singh's grievances was upheld throughout the review process. (Pl.'s Resp. Ex. 8.)

A Fourteenth Amendment due process claim involves a determination of (1) whether a governmental actor interfered with a recognized liberty or property interest; and (2) whether the procedures surrounding the alleged interference were constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460 (1989). The Due Process Clause of the Fourteenth Amendment protects liberty interests that arise either under the clause itself or under state law. *Chappell v. Manderville*, 706 F.3d 1052, 1062 (9th Cir. 2013).

The law is well-established that prisoners do not have a constitutional right to a specific prison grievance procedure. Nor do they have a liberty interest protected by the Due Process Clause in the grievance procedure. *See, e.g., Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("inmates lack a separate constitutional entitlement to a specific prison grievance procedure"); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a [prison] grievance procedure."); *see also Martin v. Roche*, No. ED CV 08-0827 SJO (JTL), 2009 WL 32635,

---

[10] The Court takes judicial notice of Singh's Exhibit 8, a CD 117 (10/03) inmate grievance form bearing log number TRCI-20120-054-043, including the response by Defendant Gower. *See* Fed. R. Evid. 201. The fact that Singh submitted the grievance form is not disputed by either party. Additionally, Singh's complaint contains a summary of Exhibit 8. (Compl. ¶¶ 36-38.)

Page 14 - FINDINGS AND RECOMMENDATION

at *15 (C.D. Cal. Jan 5, 2009) (stating that "a prisoner cannot assert a due process claim based on the manner in which his grievances are processed, nor hold the officials who processed his grievances liable for the violations that were the subject matter of his administrative appeals" and summarizing supporting cases). In any event, Singh was not deprived of any process here. Clearly, he availed himself of the prison grievance procedures. While Singh may not agree with the outcome of his grievance, he was afforded an opportunity to pursue his grievance to exhaustion.

In reference to Singh's First Amendment retaliation claim for filing grievances, Singh has a First Amendment right to file grievances and to be free from retaliation for doing so. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) ("Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'"). To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson,* 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Under the first element of a retaliation claim, plaintiffs are not required to prove the alleged retaliatory action, in itself, violated a constitutional right. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); *see also Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) ("[P]risoners may still base retaliation claims on harms that would not raise due process concerns."); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim). The interest cognizable in a retaliation

Page 15 - FINDINGS AND RECOMMENDATION

claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive.

Singh alleges that Defendant Reynolds' refusal to process his grievances was the retaliatory act. While Singh engaged in protected First Amendment conduct by filing a grievance concerning his exposure to toxic mold, the alleged retaliation – Defendant Reynolds' advising Singh that his subsequent grievances were duplicative – does not plausibly rise to the level of "adverse action." The fact that his grievances were rejected or denied, consistent with prison regulations, does not suffice to warrant any inference that the rejection or denial was retaliatory. If that were the case, a First Amendment retaliation claim would arise every time an inmate was dissatisfied with the outcome of a grievance proceeding or a Department of Corrections official made a mistake in handling an administrative grievance. The law requires the existence of a causal link between the exercise of a protected right and adverse action taken by a prison official sufficient to deter a person from exercising his rights. Singh's bare allegation that Defendant Reynolds rejected his grievance because of an alleged retaliatory motive is not enough to satisfy the first element of a retaliation claim.

Even assuming Singh could satisfy the "adverse action" element, he must also show that his protected activities were a "substantial" or "motivating" factor behind defendant's conduct. *Brodheim*, 584 F.3d at 1271. He cannot do so, in light of the regulations in place at the time *requiring* Defendant Reynolds to reject duplicate grievances. In addition, other than citing his own belief, Singh has not alleged any facts to support his claim that Defendant Reynolds rejected his grievance because Singh filed a grievance against Defendant Hall.

Page 16 - FINDINGS AND RECOMMENDATION

Finally, the Court finds that the relevant regulations in place in 2012, prohibiting duplicative grievances, served legitimate correctional goals. Singh does not challenge that this policy alone is retaliatory, or that the policy otherwise violates his rights.

For all of these reasons, the district judge should dismiss Singh's First and Fourteenth Amendment claims.

### (c)    Individual Defendants

Defendants Gower and Johnston request dismissal from this action. Specifically, Defendant Gower argues he should be dismissed because there are no allegations that he personally participated in the violation of Singh's Eighth Amendment rights. Defendant Johnston contends he should be dismissed because there "are no substantive allegations in [Singh's] complaint with regard to Defendant Johnston's alleged conduct." (Defs.' Mot. Dismiss 9.) Singh concedes that Defendant Johnston should be dismissed. (Pl.'s Resp. 44-45.) Accordingly, the district judge should dismiss Defendant Johnston from this action.

Singh, however, opposes Defendant Gower's dismissal, on the ground that Defendant Gower is "liable under a respondeat superior theory with regard to [Singh's] Eighth Amendment Medical claims." (Pl.'s Resp. 45.) Under certain circumstances, government officials acting as supervisors may be liable under § 1983. Specifically, a defendant may be held liable as a supervisor under § 1983, "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989). "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is

Page 17 - FINDINGS AND RECOMMENDATION

present and the plaintiff was deprived under color of law of a federally secured right." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quotations and citation omitted).

Singh acknowledges that Defendant Gower did not participate directly in the provision of Singh's medical care. (Pl.'s Resp. 46.) Singh contends, however, that Defendant Gower "set[] in motion a series of act[s] committed by Defendant S. Smith for which Defendant Gower was fully aware of, yet failed to take any appropriate actions." (Pl.'s Resp. 46.) Singh explains that Defendant Gower reviewed the grievances filed against Defendant Smith and was in direct control of the "medical personnel at the time of [Singh's] alleged constitutional deprivation." (Pl's Resp. 47.)

At this juncture (a motion to dismiss), Singh has alleged a sufficient causal connection between Defendant Gower's participation and Singh's claim for inadequate medical care, to avoid dismissal of Defendant Gower from this action. *See, e.g., Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001) (holding that police chief could be liable "if he knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury"); *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) ("A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." (internal alteration and quotation marks omitted)). Accordingly, the district judge should deny Defendant Gower's request for dismissal from this action.

## B.    Motion for Leave to File Supplemental Complaint

Singh seeks to "supplement" his complaint by adding six additional defendants and three new claims. Specifically, Singh's supplemental complaint names R. Nichols, Physical Plant Supervisor,

J.D. Lancaster, former Physical Plant Coordinator, M. Nooth, Eastside Administrator for ODOC, C.

Dieter, acting Nurse Manager, S. Johnston, Nurse Manager, and B. Norton, Nurse Physician. Singh

also alleges three new claims in the supplemental complaint. In Claim Three, Singh alleges that

Defendant Norton's "actions and inactions" taken in regard to Singh's ongoing chronic medical

conditions "constitutes gross negligence, medical malpractice, deliberate indifference to [Singh's]

serious medical condition in violation of ODOC Rules, policy and procedures, Oregon Laws as well

as [Singh's] federal constitutional rights under [the] Eighth and Fourteenth Amendments." (Supp.

Compl. ¶ 52.) Also in Claim Three, Singh challenges the administrative response to his grievance

against Defendant Norton. (Supp. Compl. ¶¶ 54-62.) In Claim Four, Singh alleges that Defendant

Nichols failed to take appropriate action to remove mold from Singh's cell. Singh claims that

Defendant Nichols' inaction with respect to the requested mold abatement, and the response to the

related grievance, violated his First, Eighth, and Fourteenth Amendment rights. (Supp. Compl. ¶¶

63-83.) Finally, in Claim Five, Singh alleges he was wrongfully exposed to toxic mold during a

shower area abatement process in February 2015. Singh complains of inadequate medical attention

following his exposure in connection with that abatement process. Singh contends that Defendants

disregarded ODOC policy and procedures during the demolition and cleanup process, thereby

creating additional hazard. Singh alleges that the actions of Defendants violated Singh's First,

Eighth, and Fourteenth Amendment rights. (Supp. Compl. ¶¶ 84-113.)

### 1.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 15(d), the court may permit a party to

supplement a complaint in order to set out "any transaction, occurrence, or event that happened after

the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "Rule 15(d) permits the filing

of a supplemental pleading which introduces a cause of action not alleged in the original complaint and not in existence when the original complaint was filed." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 382 (9th Cir. 1998) (internal quotations omitted). "The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed." *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1057 (9th Cir. 1982).

The factors relevant to a Rule 15(a) motion to amend are considered when addressing a motion to supplement under Rule 15(d). *See, e.g., Al Haramain Islamic Found., Inc.*, No. 3:07-cv-01155-KI, 2012 WL 6203136, at *8 (D. Or. 2012); *accord Barrett v. Williams*, No. 6:11-cv-6358-HZ, 2013 WL 6055247, at *2 (D. Or. Nov. 13, 2013); *see also Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988) (holding that a court may deny leave to supplement a complaint on grounds of undue delay, prejudice to the opposing party, or futility). Thus, leave to file a supplemental complaint should be freely granted unless there is undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or if the supplement would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). The district court has "broad discretion" in ruling on a Rule 15(d) motion. *See Keith*, 858 F.2d at 473.

### 2.    Analysis

Defendants argue the Court should deny Singh's motion to supplement because: (1) it improperly introduces separate, distinct, and new causes of action to this case that should instead be brought in a separate lawsuit; and (2) the proposed supplemental complaint would unduly delay the resolution of this case. (Defs.' Resp. 5.) Defendants rely on the Ninth Circuit's holding in *Planned Parenthood of Southern Arizona v. Neely*, in which the court held that while granting leave to file

a supplemental pleading is favored, such a pleading cannot be used "to introduce a separate, distinct and new cause of action." 130 F.3d 400, 402 (9th Cir. 1997) (internal citations and quotation marks omitted).

A review of the two pleadings shows that Singh's complaint and supplemental complaint include overlapping causes of action, *i.e.*, First, Eighth, and Fourteenth Amendment claims arising from his alleged exposure to toxic mold and the inadequate medical care for his chronic conditions. However, in his original complaint, Singh challenges the medical treatment provided by Defendant S. Smith during a sick call on June 12, 2013. (Compl. ¶ 40.) The medical claims set forth in Singh's supplement complaint arise from treatment by newly-named Defendant Norton and occurring over one year later, and include state law claims in addition to the alleged constitutional violations. Similarly, the toxic mold claims in Singh's original complaint arose from his alleged exposure to toxic mold while working in TRCI's Tortilla Room between March 27 and April 6, 2012. (Compl. ¶ 22). The toxic mold claims in his supplemental complaint arise from an alleged in-cell exposure more than two years later, and an alleged shower demolition project more than three years later. In addition, Singh names Defendant Hall as the responsible person in the Tortilla Room exposure claim. In his supplemental complaint, Singh names newly-added Defendants Nichols and Lancaster as the individuals primarily responsible for his alleged subsequent exposure.

The Court finds that Singh is attempting to add separate and distinct claims to this litigation. Although both the original complaint and the supplemental complaint allege violations of the same constitutional amendments and generally involve allegations of exposure to toxic mold and inadequate medical care, the conduct challenged in the supplemental complaint occurred between one and three years after the incidents upon which his original complaint is based. Singh's

supplemental complaint does not include new toxic mold and inadequate medical care claims against the currently named defendants in this case. Singh's proposed supplemental complaint is not a "discrete and logical extension of the original claim" against the already named defendants. *See San Luis & Delta–Mendota Water Auth. v. U.S. Dept. of Interior*, 236 F.R.D. 491, 501 (E.D. Cal. 2006). Instead, he raises entirely new claims against all new defendants. *See Neely*, 130 F.3d at 402 (Rule 15(d) "cannot be used to introduce a separate, distinct and new cause of action"); *Contreraz v. Stockbridge*, No. 1:06-cv-01817-LJO-SKO PC, 2012 WL 396503, at *1 (E.D. Cal. Feb.7, 2012) (denying prisoner's request to file supplemental complaint on grounds that doing so "[w]ould not serve the interests of judicial economy and convenience, and the proposed claims are simply not sufficiently related to the present claim to support allowing leave to supplement"); *MacDonald v. Schriro*, No. CIV-04-1001-PHX-SMM (MHB), 2007 WL 4404880, at *2 (D. Ariz. Dec.14, 2007) (denying prisoner's request to file supplemental complaint adding new parties because "the proposed supplement is more properly the subject of a separate lawsuit").

In addition, allowing Singh to file a supplemental complaint by adding new defendants with different factual bases for liability and damages runs counter to the interests of judicial economy. This case has been pending since September 2014, and there is a partial motion to dismiss pending. The supplemental complaint would significantly widen the scope of this litigation, as the new claims will require different witnesses and evidence to establish a prima facie case. To the extent Singh alleges that these new defendants have separately violated his constitutional rights, he is free to file a separate, albeit related, cause of action. As noted by Defendants, there are no technical obstacles to Singh's bringing a new, separate action to assert his new claims. *See Planned Parenthood*, 130 F.3d at 402-03 (court considers whether there would be "'technical obstacles'" to a new, separate

Page 22 - FINDINGS AND RECOMMENDATION

action alleging the claims proposed as supplemental claims); *see also United States v. Reiten*, 313 F.2d 673, 675 (9th Cir. 1963) ("[T]he general purpose of the Rules [regarding amended and supplemental complaints is] to minimize technical obstacles to a determination of the controversy on its merits."). The Court finds that judicial efficiency would not be served by allowing Singh to supplement his complaint to add new defendants and new claims at this stage of the litigation.

Finally, Defendants would suffer prejudice if the Court allowed Singh to supplement his complaint. The addition of the new claims and defendants would significantly increase the cost, length, and complexity of this litigation for the existing defendants, who have been named in this lawsuit already pending for more than a year and a half. *See Alverto v. Department of Corrections*, No. C11–5572 RJB/KLS, 2012 WL 1344732, at *1-2 (W.D. Wa. Apr. 18, 2012) ("In the exercise of its discretion to permit supplemental pleadings, the Court may also consider factors such as judicial efficiency, possible prejudice, or laches."). If the Court allowed Singh to file his supplemental complaint, the present litigation would, in effect, result in two separate actions within the same case. *See Candler v. Santa Rita County Jail Watch Commander*, No. C-11-1992-CW (PR), 2013 WL 5568248, at *2 (N.D. Cal. Oct. 9, 2013) ("Because the events in the proposed supplemental pleading occurred more than two years after the events alleged in Plaintiff's amended complaint, responding to them at this time would cause undue prejudice to Defendants.").

In sum, the Court finds that Singh's proposed supplemental complaint includes distinct and separate claims. As such, granting him leave to file the supplemental complaint will not serve the interest of judicial economy and will unduly prejudice Defendants. Singh will not suffer any prejudice, as there are no technical obstacles to filing a new case to address the harm alleged in his supplemental complaint. Accordingly, the district judge should deny Singh's Motion for Leave to

File a Supplemental Complaint, without prejudice to Singh pursuing the proposed new claims in a separate action.

## III. CONCLUSION

For the reasons set forth above, the district judge should GRANT in part and DENY in part Defendants' Partial Motion to Dismiss Plaintiff's Complaint. (ECF No. 26.) Further, the district judge should DENY Singh's Motion for Leave to File Supplemental Complaint (ECF No. 40), without prejudice to Singh pursuing his new claims in a separate action.

## IV. SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 5th day of February 2016.

STACIE F. BECKERMAN
United States Magistrate Judge